IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MARK SMEAD, | : | Case No. 3:11-cv-452 |
| Plaintiff, | : | District Judge Thomas M. Rose<br>Magistrate Judge Michael J. Newman |
| vs. | : | |
| COMMISSIONER OF<br>SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THE CASE BE CLOSED**

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C. § 405(g) and §1383(c).  At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff Mark Smead ("Plaintiff") not "disabled" within the meaning of the Social Security Act and therefore unentitled to Supplemental Security Income ("SSI").

This case is before the Court upon Plaintiff's Statement of Errors (doc. 8), the Commissioner's Memorandum in Opposition (doc. 9), Plaintiff's Reply (doc. 10), the administrative record (doc. 6),[2] and the record as a whole.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed his application for SSI on July 8, 2007, asserting that he has been under a "disability" since August 15, 1993. PageID 211-13. Plaintiff claims he is disabled due to back pain, depression, and mood/personality disorders. PageID 92, 104-05, 259, 302.

Following initial administrative denials of his application, an administrative hearing was conducted before ALJ Eve Godfrey in June 2011. PageID 82-124. On July 29, 2011, ALJ Godfrey issued a written decision, concluding that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act. PageID 67-75.

Specifically, the ALJ's "Findings," which represent the rationale of her decision, were as follows:

1. The claimant has not engaged in substantial gainful activity since July 8, 2009, the application date (20 CFR § 416.971 *et seq.*);

2. The claimant has the following severe impairments: mild arthritis of the lumbar spine, below average intelligence, a mood disorder, and a personality disorder with antisocial features (20 CFR § 416.920(c));

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 406.920(d), 416.925 and 416.926);

4. After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity ["RFC"] to perform medium to light level work as defined in 20 CFR § 416.967(c) except simple repetitive tasks in a nonpublic environment and contact with coworkers limited to superficial and impersonal interaction;[3]

---

[3]The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 416.967. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b). Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

5. The claimant has no past relevant work (20 CFR § 416.965);

6. The claimant was born [in] 1979 and was 44 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR § 416.963);

7. The claimant has a limited education and is able to communicate in English (20 CFR § 416.964);

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR § 416.968);

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR §§ 416.969 and 416.969(a)); and

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 8, 2009, the date the application was filed (20 CFR § 416.920(g)).

PageID 69-75 (footnote added).

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 57-61. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then filed this timely appeal on December 27, 2011. Doc. 2.

**B. Plaintiff's Hearing Testimony**

At the administrative hearing, Plaintiff testified that his back pain makes mobility difficult. PageID 92. He is not able to easily bend over. PageID 97. He spends most of his day trying to manage his pain, playing on the computer, or listening to music. PageID 93-94. Plaintiff lives alone in a house owned by his mother, and is able to do his own chores. *Id*. He has not worked for nearly 20 years, and is financially supported by his mother. PageID 90-92.

Plaintiff additionally testified that he cannot get along with others. PageID 92. He only leaves the house twice per month, and typically accompanies his mother to the store or a doctor's

appointment.  PageID 95.   Plaintiff stated that when he goes out, he occasionally finds himself getting into confrontations with strangers.  PageID 97.  He relayed an incident during which he lit a cigarette as he exited a grocery store, and ended up arguing with another customer who told him he was breaking the law.  PageID 95-97.  Plaintiff has not had any run-ins with the police since being imprisoned more than twenty years ago for theft.  PageID 91.

Plaintiff testified that he has at least five bad pain days per week where the pain makes him more irritable, and less able to tolerate being around others.  PageID 98.  He also testified that he experiences crying spells twice per week.  PageID 104-05.

Plaintiff acknowledged a history of frequent alcohol use, but testified that he stopped drinking seven or eight months prior to the hearing.   PageID 102.

### C.  Vocational Expert's Hearing Testimony

Gloria Lasoff, a vocational expert ("VE"), also testified at the hearing.  PageID 106-23. The ALJ proposed a series of hypotheticals to the VE, each based upon a medical source opinion of record.  The VE testified that the November 2009 physical RFC assessment of medical consultant Jerry McCloud, M.D., along with the mental RFC assessment of Katherine Lewis, Psy.D., if adopted together as Plaintiff's RFC, would mean that Plaintiff is capable of performing a full range of medium, light, and sedentary work.  PageID 106-07.  The VE testified that there are 3,900 medium exertional jobs and 500 light exertional jobs in the regional economy, along with 4,100 sedentary exertional jobs in the state economy, which Plaintiff could perform if he were limited to non-public, simple, repetitive task work with minimal, superficial, and impersonal communications with others.  PageID 111-12.

However, the VE acknowledged that the limitations reported in February 2011 by Plaintiff's treating physician, Robert Brandt, M.D. -- *i.e.*, that Plaintiff cannot work more than

one hour per day -- if fully-credited by the ALJ, would preclude Plaintiff from performing all levels of work. PageID 106-07.

## II. APPLICABLE LAW

### A. Substantial Evidence Standard

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Id.*

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis – may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Thus, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A).

The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 416.920. Although a dispositive finding at any step ends the ALJ's review, *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 416.920(a)(4); *Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### III. ANALYSIS

As a preliminary note, Plaintiff's pertinent medical records have been adequately summarized in his Statement of Errors and the administrative decision, *see* doc. 8, at PageID 530-35; PageID 70-74, and the Court will not repeat them here. Where applicable, the Court will identify the medical evidence relevant to its decision.

On appeal, Plaintiff challenges: (1) the ALJ's consideration of Dr. Brandt's opinion; (2) the ALJ's evaluation of the opinions of the state agency psychologists; (3) the veracity and sufficiency of the VE's testimony; and (4) the sufficiency of the evidence underlying the ALJ's RFC finding. PageID 537-47.

### A. The ALJ's Decision to Accord Less Than Controlling Weight to Dr. Brandt's Opinion is Supported by Substantial Evidence

The record contains Dr. Brandt's treatment notes from June 2009 through April 2011. PageID 418-28, 470-74, 484-87. On March 15, 2010, Dr. Brandt completed interrogatories for the Bureau of Disability Determination, and reported a diagnosis of chronic low back pain. PageID 416. However, when asked to identify the limitations caused by the reported impairment, Dr. Brandt noted that Plaintiff "needs full, more complete evaluation for ongoing [treatment]." PageID 417. In that report, Dr. Brandt additionally noted that Plaintiff "needs [a] full eval[uation] by [an] orthopedist or neurologist." PageID 415.

On February 7, 2011, Dr. Brandt opined that Plaintiff suffers from "severe" pain; cannot stoop, bend, or lift more than 10 pounds on even an occasional basis; cannot stand or sit for more than 15 minutes at a time; and can work less than one hour per day. PageID 475. Moreover, Dr. Brandt referenced an MRI taken a month earlier,[4] but included no discussion of the MRI or any other written explanations in support of his findings. *See* PageID 475. In April 2011, Dr. Brandt reported "[Plaintiff] is currently disabled due to his back problems." PageID 486.

The ALJ accorded "little weight" to this opinion stating, "[t]he limitations imposed by Dr. Brandt on February 7, 2011, are inconsistent with the evidence of record and in fact, these findings are inconsistent with Dr. Brandt's treating records which show that [Plaintiff] needed a

---

[4]Plaintiff's MRI, conducted on January 18, 2011, showed a "mild broad based bulge of L4-L5 with small annulral tear" and "degenerative disc and endplate changes at L5-S1 with mild bilateral neural foraminal narrowing." PageID 477.

more comprehensive evaluation as there were no diagnostic testing showing objective results upon which to base an opinion." PageID 74. The ALJ further explained that Dr. Brandt's opinion indicates symptoms worse than the January 2011 MRI findings would predict. *Id.* Moreover, the ALJ found Dr. Brandt's assessment unsupported and inconsistent with other evidence in this case, and inconsistent with his own treatment notes. *Id.* Plaintiff argues that the ALJ's analysis in this regard constitutes reversible error.

The opinions of treating physicians are typically entitled to controlling weight. *Cruse v. Comm'r of Soc. Sec.*, 502 F. 3d 532, 540 (6th Cir. 2007). To that end, under the "treating physician rule," the ALJ is required to "generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because: 'these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)).

Nevertheless, a treating physician's statement -- that a claimant is disabled -- is not determinative of the ultimate issue of disability. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight only if it is well-supported by medically acceptable clinical and laboratory techniques, and is not inconsistent with the other evidence of record. *Id.*; *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997). Accordingly, an ALJ may properly reject a treating physician's opinion that does not meet these standards. *See* 20 C.F.R. § 404.1527(d)(2).

Likewise, a treating source's opinion as to a claimant's employability is a legal conclusion, and not a "medical source opinion," as defined by Social Security regulations, which

-8-

the ALJ must accept. *See* 20 C.F.R. §§ 404.1527(c)–(d). Social Security regulations mandate that the question -- of whether or not a claimant is disabled -- is an administrative issue reserved solely to the province of the Commissioner. *Id*.; *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician"). Thus, the ALJ need not have given Dr. Brandt's opinion -- that Plaintiff is disabled -- either controlling or deferential weight. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will find that you are disabled"); *see also* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2 ("Whether an individual is 'disabled' under the Act. The regulations provide that the final responsibility for deciding issues such as these is reserved to the Commissioner").

The ALJ's analysis regarding Dr. Brandt's opinion is well supported by substantial evidence. The ALJ adequately discussed how Dr. Brandt's conclusions are inconsistent with his own treatment notes, as well as the other medical evidence of record. PageID 71-74. For instance, in 2009 and 2010, Dr. Brandt reported Plaintiff's back pain as both "stable" and well-controlled by medication. *See* PageID 418-28. Those notes also show an improvement from June to August 2009, along with an observation that Plaintiff had "no problems getting in and out of his car." PageID 419, 423-24. In January 2010, Dr. Brandt reported Plaintiff was ambulating normally, and his back pain was "stable." PageID 427-28. He also noted that Plaintiff was out of back pain medication, but "does a lot of OTC (over-the-counter) stuff [and] says his pills keep things under control." *Id*. In May 2010, when asked about his pain, Plaintiff reported he was "doing ok." PageID 474. Moreover, in November 2010 -- just four months prior to his February 2011 opinion -- Dr. Brandt noted Plaintiff was "[h]ere for meds [and] [h]as not been in for a while," and was only in "mild distress." PageID 470-71.

In addition, the ALJ reasonably considered Dr. Brandt's March 2010 report, in which he offers no opinion regarding the extent of the functional limitations imposed by Plaintiff's low back pain. *See* PageID 415-17. Notably, by that time, Dr. Brandt had been treating Plaintiff for more than eight months; his decision not to identify *any* limitations was properly questioned by the ALJ, particularly in light of the extreme limitations he opined eleven months later.

Furthermore, the ALJ's analysis shows that contrary medical evidence of record -- including the September 2009 report of consultative examiner Damian Danopulos, M.D., and the November 2009 physical RFC report of Dr. McCloud -- was properly weighed and considered. *See* PageID 71, 370-78. Dr. Danopulos found that Plaintiff moved about normally, had a normal gait, and had full strength and a full range of motion in his arms and legs. *See* PageID 371-73, 375-78. Dr. Danopulos also reported lumbar spine motions were normal, except extension was restricted to 20 degrees. PageID 372. Dr. Danopulos assessed only mild arthritic lumbo/sacral changes, and found Plaintiff had no muscle spasms upon examination. PageID 373, 376.

After reviewing the record, Dr. McCloud opined that Plaintiff was capable of occasionally lifting up to 50 pounds; frequently lifting 25 pounds; sitting, standing and/or walking for a total of 6 hours in an 8-hour workday; and no restrictions in his ability to push or pull. Specifically, Dr. McCloud noted,

> the claimant's allegations are not consistent with the medical evidence. The claimant stated on his application, that due to his back, he can hardly take a shower, can't bend over, and [has] stabbing sharp pain in his lower back. The claimant has not been receiving any type of treatment for his back condition. The claimant has not been taking any medication for his back condition. The claimant was able to perform tasks at the [consultative] examination w[ith] minimal difficulty.

PageID 412.

To the extent Plaintiff argues that the ALJ erred because some evidence exists in the record which supports a finding of disability, the Court finds such an argument unavailing. *See*

*Buxton*, 246 F.3d at 772. It is the Commissioner's function to resolve conflicts in the medical evidence, *see Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987), and that is exactly what the ALJ reasonably did here. Accordingly, the Court finds the ALJ's conclusion -- that Dr. Brandt's opinion was not entitled to controlling or deferential weight – is supported by substantial evidence.

### B. The ALJ Properly Considered the Evidence of Record in Formulating Plaintiff's Mental RFC

Plaintiff next argues that the ALJ erred by failing to properly weigh the opinions of state agency consultative examining psychologist Stephen Halmi, Psy.D.,[5] and reviewing psychologist Katherine Lewis, Psy.D., with the other evidence of record. Doc. 8 at PageID 542-43. The Court disagrees.

The record demonstrates the ALJ considered all of the mental-health related medical evidence, including Dr. Halmi's October 2009 evaluation, Dr. Lewis' mental RFC assessment,[6] and the treatment records from Plaintiff's mental health therapists at Samaritan Behavioral Health and Day-Mont Behavioral Health Care. *See* PageID 71-72, 380-402, 479-83, 499-522. The ALJ also appropriately considered Plaintiff's daily activities. PageID 70, 73; *see Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994).

---

[5] Dr. Halmi's report is stated as belonging to "Dr. Farrell" in the ALJ's decision. The Court notes that Dr. Farrell is in the same practice group as Dr. Halmi, and Dr. Farrell's name tops the letterhead for the practice. *See* PageID 380.

[6] Dr. Lewis concluded that Plaintiff had the mental RFC to "perform moderately complex tasks in a relaxed setting without strict time pressures or production quotas. He can manage infrequent superficial interactions with supervisors and coworkers, and no interaction demands with the public. He would do best in an isolated setting that requires minimal to no [co-worker] interactions." PageID 406. Dr. Lewis did not indicate Plaintiff to be markedly limited in any category other than his "ability to interact appropriately with the general public." PageID 403-04. Such a finding is consistent with Dr. Halmi's opinion that Plaintiff's only work-related ability -- more severely impaired than moderate -- was his "ability to relate to others, including co-workers and supervisors," which Dr. Halmi found to be serious. *See* PageID 380-88; *see also Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 (6th Cir. 2011) (noting that "moderate" functional limitations are "non-disabling").

The ALJ is ultimately responsible for assessing a claimant's RFC, taking into consideration the opinions of medical sources and other relevant evidence. *See* 20 C.F.R. § 416.927(e). Here, the ALJ reasonably weighed the evidence in formulating Plaintiff's mental RFC, which limits him to jobs with simple repetitive tasks in a non-public environment, and limited contact with co-workers. PageID 70-71. Such a finding is supported by the record as it reasonably accommodates the limitations identified by Drs. Halmi and Lewis. As such, the ALJ acted appropriately in resolving conflicts in the medical evidence. *See Hardaway*, 823 F.2d at 928.

### C. Plaintiff Has Failed to Demonstrate the ALJ Unduly Influenced the Testimony of the VE

At Step Four, the ALJ concluded that Plaintiff's limitations impeded his ability to perform a full range of medium and light work. PageID 75. Accordingly, the ALJ consulted a VE to assist her in determining the extent to which Plaintiff's limitations eroded the unskilled medium to light work occupational base. *Id.* Plaintiff argues that the ALJ unduly influenced the testimony of the VE. *See* doc. 8 at PageID 543. Plaintiff asserts that the ALJ "assumed an adversarial posture with [the VE] and began offering her own assessment of Plaintiff's employability while talking over the vocational expert." *Id.* at PageID 544.

Here, the ALJ did not simply ask the VE one or two hypotheticals based upon a predetermined RFC. Rather, the ALJ posed many hypotheticals to the VE, each carefully thought out and based upon a medical source opinion of record. In response, the VE provided adequate testimony demonstrating that there are 3,900 medium exertional jobs and 500 light exertional jobs in the regional economy, along with 4,100 sedentary exertional jobs in the state, which Plaintiff could perform if he were limited to non-public, simple, repetitive task work with minimal, superficial, and impersonal communications with others. PageID 111-12. As such, the

ALJ's reliance upon the VE's testimony at Step Five was reasonable, and the Commissioner's burden was satisfied. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

### D. The ALJ's Non-Disability Finding is Supported by Substantial Evidence

Plaintiff lastly argues that the ALJ's non-disability finding is, as a general matter, unsupported by substantial evidence. Again, the Court disagrees for two reasons. First, the record strongly suggests that Plaintiff can perform a wide range of activities and is not disabled. *See supra*. This conclusion is supported by the medical evidence, discussed above, which shows that Plaintiff's impairments, whether viewed singly or in combination, do not demonstrate disability. *Id*. Second, it is not the Court's role to sift through the facts and make a *de novo* determination of whether or not a claimant is disabled. The ALJ, not the Court, is the finder of fact. *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ reasonably undertook that role in this case. *Id*. So long as the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. §405(g); *Richardson*, 402 U.S. at 401. Where, as here, there is substantial evidence supporting the ALJ's resolution of the disputed medical evidence, the Court must affirm the ALJ even if the Court might have resolved such evidence in Plaintiff's favor had it been the trier of fact. *Nunn v. Bowen*, 828 F.2d 1140, 1144 (6th Cir. 1987).

### IV. RECOMMENDATION

For the foregoing reasons, the Court finds fault with all eight of Plaintiff's assignments of error. The ALJ's decision is found supported by substantial evidence, and should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's final non-disability finding be found supported by substantial evidence, and **AFFIRMED;** and

2. This case be **CLOSED**.

January 28, 2013                                                  **s/Michael J. Newman**
                                                                   United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).